UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAMON RODRIGUEZ,

    Plaintiff,

v.                                         Case No. 8:18-cv-2745-T-60CPT

CITY BUFFET MONGOLIAN
BARBEQUE, INC. and BI XIA XIONG,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before me on referral are the *Plaintiff's Third Motion for Final Judgment After Default Against Defendants City Buffet Mongolian Barbeque, Inc. and Bi Xia Xiong*, and his accompanying *Amended Affidavit of Indebtedness*. (Docs. 21, 22). For the reasons discussed below, I respectfully recommend that the Plaintiff's motion be granted in part and denied in part.

I.

Plaintiff Ramon Rodriguez initiated this Fair Labor Standards Act (FLSA) action in November 2018 by filing a six-count complaint against his former employer, Defendant City Buffet Mongolian Barbeque, Inc. (City Buffet), and an officer/director of City Buffet, Bi Xia Xiong. (Doc. 1). In his complaint, Rodriguez avers that the Defendants violated the FLSA's overtime, minimum wage, and anti-tip retention

provisions while he worked at City Buffet between May 2016 and June 2018. *Id.* When the Defendants failed to respond to his complaint, Rodriguez obtained a Clerk's default against them under Rule 55(a) of the Federal Rules of Civil Procedure. (Docs. 12, 13).

Several months later, Rodriguez moved for a default judgment pursuant to Rule 55(b), asserting that he was entitled to $29,172 in actual damages and an equal amount in liquidated damages for a total sum of $58,344. (Doc. 14). The Court denied that motion without prejudice, noting that the motion lacked an affidavit or other evidence to buttress Rodriguez's damages request, as well as a supporting legal memorandum as required by the Local Rules. (Doc. 17).

Rodriguez responded by filing an amended motion for default judgment in August 2019, along with an affidavit setting forth the same $58,344 damages figure as in his initial motion. (Docs. 18, 19). The Court denied that amended motion, again without prejudice, because Rodriguez's submissions were insufficient to support his request for relief. (Doc. 20).

The instant motion and affidavit—seeking a reduced damages sum of $54,805.80—followed. (Docs. 22, 23).

II.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a Clerk's

default has been entered, a plaintiff may apply to either the Clerk or the Court for a default judgment.  Fed. R. Civ. P. 55(b).

Before granting such a motion, the courts must "ensure that it has jurisdiction over the claims and parties." *Sec. and Exch. Comm'n v. Martin*, 2019 WL 1649948, at *2 (M.D. Fla. Apr. 1, 2019), *report and recommendation adopted*, 2019 WL 1643203 (M.D. Fla. Apr. 16, 2019); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.") (internal quotation marks omitted).

Once jurisdiction is established, the Court may enter default judgment if "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The showing required in this context "is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim." *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (citing *Surtain*, 789 F.3d at 1245); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").  Thus, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678

3

(2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  However, "while a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal alteration and quotation omitted).

If a claim for liability is adequately pleaded, the court must then assess its ability to measure damages.  To this end, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters."  *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from."  *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010).

If warranted, the court may conduct an evidentiary hearing on the issue of damages.  Fed. R. Civ. P. 55(b)(2)(B).  Such a hearing is "not a *per se* requirement," however, and is not necessary where the sought-after damages amount is a liquidated sum, is capable of mathematic calculation, or "where all [the] essential evidence is already of record."  *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citing *S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

4

Each of the considerations—jurisdiction, liability, and damages—is addressed in turn below.

III.

A.

Beginning with jurisdiction, it is clear that the Court has federal-question jurisdiction over Rodriguez's FLSA claims. 29 U.S.C. § 216(b) (FLSA actions may be brought "in any Federal or State court of competent jurisdiction"); 28 U.S.C. § 1331 (conferring original jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States"); *Quinn v. Dermatech Research, LLC*, 2019 WL 1586736, at *1 (M.D. Fla. Apr. 12, 2019) ("This Court has federal question subject matter jurisdiction due to the FLSA claims.").

The Court likewise has personal jurisdiction over the Defendants. As alleged in the complaint, City Buffet is a Florida corporation with its principal place of business in Hillsborough County, Florida. (Doc. 1 at 1); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that a corporate defendant's place of incorporation and/or principal place of business is a "paradigm" basis for the exercise of general jurisdiction). As also alleged in the complaint, Xiong is a resident of Hillsborough County and an officer/director of City Buffet with both economic and day-to-day control of the company. (Doc. 1 at 2-3). Furthermore, the returns of service filed in this action evidence that City Buffet was properly served with the summons and complaint through its Registered Agent in accordance with Florida

5

Statute § 48.081, and that Xiong was personally served in accordance with Florida Statute § 48.031(1)(a).  (Docs. 7, 8).

As a result, I find that the Court has jurisdiction over both the claims and the parties.

B.

Turning to the issue of liability, as alluded to above, Rodriguez asserts six counts against City Buffet and Xiong: two for violations of the FLSA's overtime provision (Counts I and II); two for violations of the FLSA's minimum wage provision (Counts III and IV); and two for violations of the FLSA anti-tip retention provision (Counts V and VI).  (Doc. 1).  As explained below, Rodriguez is entitled to relief on his overtime claims but not on his minimum wage claims, and is entitled to only partial relief on his anti-tip retention claims.

### 1.   Overtime Claims

With limited exceptions not applicable here, the FLSA mandates that covered employers pay their workers at a rate of one and one-half times the workers' regular pay rate where the workers exceed more than forty hours per week.  *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 206(a) and § 207(a)).  Any employer who violates the FLSA's overtime provision is "liable to the employee . . . affected in the amount of their . . . unpaid overtime compensation . . . and . . . an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

To trigger liability under the FLSA's overtime provision, a plaintiff must make a threshold showing that: (1) an employee-employer relationship existed between the

6

parties during the relevant period; and (2) he was "covered" by the FLSA during that time frame. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).

With respect to the first requirement, the FLSA defines the terms "employee" and "employer" broadly. *Id.* An employee is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), while an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). As defined, an employer is therefore not only a company for whom the employee directly works but also includes "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis,* 662 F.3d at 1298 (citation omitted).

Rodriguez's allegations sufficiently demonstrate an employee-employer relationship between the Defendants and him. He avers, in particular, that he was employed by City Buffet and Xiong as a hibachi chef from May 2016 through June 2018. (Doc. 1 at 3). He also asserts that Xiong "is an officer/director of City Buffet," who "had economic control [both] of City Buffet . . . and of the nature and structure of [Rodriguez's] employment relationship with City Buffet." *Id.* at 4; *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) ("[W]e have joined the 'overwhelming weight of authority' and held that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (citations

7

omitted); *Elwell v. Pierce N Tell, LLC*, 2014 WL 12617813, at *2 (M.D. Fla. Mar. 6, 2014) (holding that allegations about a company's owner and operator with direct supervisory responsibility over plaintiff were sufficient to state a cause of action under the FLSA against an individual and company) (citing *Patel v. Wargo*, 803 F. 2d 632, 638 (11th Cir. 1986)).

With respect to the second requirement, "a plaintiff employee must establish one of two types of coverage under the FLSA: (1) 'enterprise coverage,' which applies to the defendant employer, or (2) 'individual coverage,' which applies to the plaintiff employee." *Gaviria v. Maldonado Brothers, Inc.*, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (citing *Martinez v. Palace*, 414 F. App'x 243, 244-45 (11th Cir. 2011) and *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006)). Of relevance here, "[a]n employer falls within the FLSA's enterprise coverage if it meets two requirements: (1) it 'has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and (2) has an 'annual gross volume of sales made or business done,'" which is in excess of $500,000. *Id*. (quoting 29 U.S.C. § 203(s)(1)(A)); *see also Polycarpe*, 616 F.3d at 1220.

In his complaint, Rodriguez pleads that City Buffet qualified as an enterprise during the relevant time frame because it had annual gross volume of sales exceeding

$500,000 and was engaged in interstate commerce. (Doc. 1 at 2). In support of the latter assertion, Rodriguez alleges that City Buffet:

> purchased equipment and products manufactured outside the state of Florida; provided services to or sold, marketed, or handled goods and materials to customers throughout the United States; provided services for goods sold and transported from across state lines; obtained, solicited, and accepted funds from sources outside the state of Florida; used telephonic transmissions traversing state lines in the ordinary course of business; transmitted funds outside the state of Florida; and otherwise regularly engaged in interstate commerce.

*Id.* In addition, Rodriguez asserts that "two or more of [City Buffet's] employees regularly handled and worked with goods and materials[, which] moved in or [were] produced in interstate commerce." *Id.* Accepting these allegations as true, I find they suffice to show enterprise coverage. *See Polycarpe*, 616 F.3d at 1220-29 (explaining the scope of enterprise coverage); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) (noting that a plaintiff "need not do much" to properly allege enterprise coverage—he need only aver the nature of his work, the nature of his employer's business, and a sufficient connection between his work and interstate commerce) (collecting cases).

Once a plaintiff has established that an employment relationship and coverage exist, the remaining elements of a FLSA violation are "quite straightforward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008). All that "must be shown [is] simply a failure to pay overtime compensation and/or minimum wages to covered employees." *Id.* Although *Labbe* is a non-binding, unpublished opinion and was

9

decided pre-*Iqbal*, its teachings on the "straightforward" pleading requirements for FLSA claims are instructive.[1] In short, an FLSA overtime plaintiff must plead sufficient facts, plausible on their face, to demonstrate that he worked more than forty hours in at least one workweek, and that the defendant failed to pay the requisite premium for those overtime hours. *Cooley v. HMR of Ala., Inc.*, 259 F. Supp. 3d 1312, 1319 (N.D. Ala. 2017); *Stafflinger v. RTD Constructions, Inc.*, 2015 WL 9598825, at *2 (M.D. Fla. Dec. 14, 2015), *report and recommendation adopted*, 2016 WL 48110 (M.D. Fla. Jan. 5, 2016).

Rodriguez satisfies these pleading requirements. In particular, he alleges that he worked in excess of forty hours a week during his tenure at City Buffet and that the Defendants failed to compensate him at the time-and-a-half rate. (Doc. 1 at 4-7).

In light of the above, I find that the well-pleaded allegations underlying Counts I and II establish the Defendants' liability to Rodriguez for violations of the FLSA's overtime provision.

---

[1] *Labee* must be read in light of the Supreme Court's decision in *Iqbal*. As noted by the Ninth Circuit:
> Although we agree with the Eleventh Circuit that detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim, we do not agree that conclusory allegations that merely recite the statutory language are adequate. Indeed, such an approach runs afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . . ."

*Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014), *as amended* (Jan. 26, 2015) (internal citations omitted).

10

2. *Minimum Wage Claims*

Rodriguez's minimum wage claims, however, fail. Similar to the overtime provision discussed above, the FLSA requires employers to pay workers at least $7.25 per hour. 29 U.S.C. § 206(a); *Polycarpe*, 616 F.3d at 1220 (citing 29 U.S.C. § 206(a)). In order to state an FLSA minimum-wage claim, a plaintiff must therefore plead sufficient facts, plausible on their face, to show that the defendant did not pay him this minimum hourly rate. *Moser v. Action Towing Inc. of Tampa*, 2017 WL 10276702, at *1 (M.D. Fla. Feb. 6, 2017) (citation omitted).

Here, Rodriguez alleges both in his complaint and in his most recent affidavit that he was paid $8.00 per hour for all of the hours he worked each month. (Docs. 1, 22). Because this hourly rate is more than the federal minimum wage, Rodriguez's claims for violations of the FLSA's minimum wage provision (Counts III and IV) cannot lie.[2]

---

[2] Rodriguez relies upon the Florida minimum wage (which is higher than the federal minimum wage) to support his minimum wage claim. (Doc. 22 at 3 n.1); *see also* Florida Department of Economic Opportunity, Florida Minimum Wage History, available at http://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2020-minimum-wage/florida-minimum-wage-history-2000-2020.pdf?sfvrsn=2 (last visited April 22, 2020). This he cannot do. *Moser*, 2017 WL 10276702, at *3 ("Although states are entitled to set a minimum wage rate that is higher than the federal minimum wage rate, the FLSA contains no provision requiring the payment of the higher state minimum wage. Accordingly, [a p]laintiff is only entitled to recover the lower minimum wage rate mandated under the FLSA.").

11

### 3. *Anti-tip Retention Claims*

As explained above, Rodriguez asserts in his final two counts that the Defendants violated the FLSA's anti-tip retention provision—codified at 29 U.S.C. § 203(m)—by pocketing his tips. (Doc. 1 at 9-10). As a result of these alleged violations, Rodriguez avers that he is owed $10,900 in wrongfully withheld tips ($100 per week for the 109 weeks he worked for the Defendants between May 2016 and June 2018), plus an equal amount in liquidated damages. (Doc. 22 at 3). Rodriguez's anti-tip retention claims are valid only in part.

The problem with these claims is that the portion of section 203(m) upon which Rodriguez relies was not enacted until March 23, 2018. Pub. L. 115-141, Div. S, Title XII, § 1201(a), Mar. 23, 2018, 132 Stat. 1148; *see also Norsoph v. Riverside Resort & Casino, Inc.*, 2020 WL 641223, at *4 (D. Nev. Feb. 11, 2020) (detailing the case law and legislative history of the anti-tip retention provision of the FLSA). On that date, Congress passed the Consolidated Appropriations Act of 2018 (CAA), which amended section 203(m) to add the following language: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). The CAA also amended another FLSA provision—section 216(b)—to state that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips

unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Rodriguez does not present any argument, nor do I find any indication, that Congress intended these March 23, 2018, amendments to apply retroactively. *See Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (recognizing the presumption "against retroactive legislation, under which courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity.") (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 263 (1994)); *I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001) ("A statute may not be applied retroactively . . . absent a clear indication from Congress that it intended such a result."). As such, I find no reason based on the record before me to conclude that the right to sue for wrongfully withheld tips should be applied to any tips to which Rodriguez claims entitlement prior to March 23, 2018. Rather, at most, Rodriguez is permitted to collect only the unlawfully retained tips for the fourteen-week period from March 23, 2018, through the date of his separation from City Buffet at the end of June 2018.

C.

With respect to the matter of damages, an evidentiary hearing is unnecessary because, as detailed below, the amounts Rodriguez claims are for a sum certain subject to easy calculation and supported by his amended affidavit. (Doc. 22); *see also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar. 25, 2019) ("A plaintiff may establish his or her damages by affidavit.") (citing *Adolph Coors*, 777 F.2d

13

at 1544), *report and recommendation adopted sub nom.*, *Clough v. McClure Constr. Co, LLC*, 2019 WL 1558667 (M.D. Fla. Apr. 10, 2019). Such amounts include liquidated damages, which must be awarded absent a finding that the employer acted in good faith and under the reasonable belief that it was in compliance with the FLSA. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("[L]liquidated damages are mandatory absent a showing of good faith.") (citation omitted); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

In support of his FLSA overtime damages, Rodriguez attests in his affidavit that he worked 3,815 hours of overtime while he was employed by the Defendants. (Doc. 22 at 3). Based on his regular pay rate of $8 per hour, he is owed an overtime premium of $4 per hour for each hour he worked in a week in excess of forty hours. Using this half-time rate, I calculate that Rodriguez is entitled to $15,260 in overtime compensation and an equal sum in liquidated damages.

In support of his FLSA anti-tip retention claims, as noted above, Rodriguez avers that he is owed $100 per week plus liquidated damages. (Doc. 22 at 3). Given my finding that these anti-tip retention claims may only run from March 23, 2018, forward, he is entitled to fourteen weeks of withheld tips, or $1,400, plus an equivalent amount in liquated damages.

IV.

In light of all of the above, I recommend:

1.  *Plaintiff's Third Motion for Final Judgment After Default Against Defendants City Buffet Mongolian Barbeque, Inc. and Bi Xia Xiong* (Doc. 21) be granted in part and denied in part;

2.  Default judgment be entered in the Plaintiff's favor and against the Defendants on the Plaintiff's FLSA overtime and anti-tip retention claims (Counts I, II, V and VI) in the total amount of $33,320; and

3.  The Court direct the Clerk of Court to close the case following the entry of the default judgment.

Respectfully submitted this 22nd day of April 2020.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record
Any unrepresented party